THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* MIGUEL PACHECO, Defendant and Appellant.

No. 8860. Argued November 14, 1941.—Decided November 25, 1941.

*E. Acosta Doménech* for appellant. *George A. Malcolm, Attorney General, R. A. Gómez, Prosecuting Attorney,* and *Luis Negrón Fernández, Assistant Prosecuting Attorney,* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

The District Attorney of San Juan filed an information against Miguel Pacheco charging him with the offense of

carrying a prohibited weapon in that, in the town of Río Piedras, on October 14, 1940, he carried on his person unlawfully, wilfully, and maliciously, for purposes of offense and defense, a knife, a weapon with which bodily injury may be caused.

The defendant appeared at the trial represented by counsel. After the information had been read, the parties stipulated to submit the case on the evidence taken on the same day in another felony case; whereupon the court, in view of said evidence, found the defendant guilty of carrying a weapon, as charged, and sentenced him to two months in jail, without costs.

Feeling aggrieved by that judgment, the defendant appealed. He urges in three assignments of error, that the court erred in rendering a judgment which does not conform to the law and is not supported by the evidence; in convicting him contrary to the verdict of the jury, in the felony case; and in acting moved by passion and prejudice.

 Let us consider the first error assigned. The evidence for the prosecution which was introduced in the case of attempt to kill prosecuted against the same defendant, and on which was submitted the case herein of carrying a weapon, began with the testimony of Dr. Fernando Asencio, a physician-surgeon, who treated José Alvarez. According to the witness, he showed two wounds, a puncture wound on the left-hand side of the abdomen and another puncture wound on the intercostal space which penetrated the long tissues, which wounds might have been inflicted "with an awl, a dagger, or a steel arm (*arma blanca*)."

Alvarez, the next witness to testify, stated that on October 14, 1940, "I was coming up with some parcels . . . and several peoples were calling me names . . . Miguel Pacheco grabbed a banana and pushed it into my mouth . . . and then dealt me a blow with a pointed instrument here (showing the place) and another here (showing the place) and

some boys took me to the hospital." Pacheco "held the knife in his hand." He struck him "twice with the dagger, first in the abdomen and then in the ribs." He stated that he was "almost blind from childhood, I can not see through one eye and very little through the other," and that he used "to sell my vegetables so that I need not beg from anybody." He stated that he knew the defendant and, on cross-examination by the latter's attorney as to whether he knew him because he heard him talking, he answered: "Yes, by his voice, and because he was holding the sharp instrument and squeezed my neck when pushing the banana."

Claudina Alvarez stated: "I saw Celín stopping him (Alvarez) and they pushed each other and Pacheco fell on him and the three grappled with each other and Pacheco wounded him," with an unknown weapon.

Pablo Batista explains how Alvarez, "the blind man", was teased by several boys and how the defendant intervened saying: "Blind man, take this, eat some banana, and the blind man threw it away as he was in a rage and then Celín (a boy who accompanied the defendant) seized the stones from his hands and Celín and the blind man grappled with each other and, as Celín was drunk, he fell down and Miguel Pacheco was further up and mixed with them in the fight and the blind man . . . came out with two wounds." He did not see anybody holding any weapon.

Angela Nieves saw José Alvarez "who was coming from a shop with some little parcels" and Celín and Pacheco who "were drunk and calling José Alvarez names, and Pacheco saying: 'Take this, Canela, eat some banana.' Celín was the most drunk and José Alvarez stooped to pick up two stones to throw at them and Celín when holding him, as he was very drunk, fell to the ground and Pacheco then jumped and wounded him on the abdomen." She was asked: "What kind of a weapon was it?" and she answered: "It must have been a knife." A request to strike out the answer was made

and granted, and then she stated to the judge that she did not see the weapon.

Roberto Díaz witnessed the banana incident and then the fight, but he does not know who wounded Alvarez.

Juan Cintrón saw Pacheco with a friend, in an intoxicated condition, "and the blind man was carrying a parcel in his hands and Pacheco said to him: 'eat some banana,' and Pacheco was holding a knife and the other grabbed the blind man . . . and the blind man fell to the ground and on falling he seized a stone and Pacheco came up and struck him and wounded him here on the abdomen and on the back."

The defense questioned him regarding the weapon and he answered, "He was holding a pocketknife. Q.—A knife or a pocketknife? A.—It is the same thing."

The evidence for the defense consisted of the testimony of the witness Cesáreo Suárez and that of the accused.

The witness testified:

"It so happened that on that day, at the corner of Palma and León Streets, I was playing domino with Miguel Angel and Ernesto Rodríguez and I noticed from the corner that there was a crowd and I said: 'I wonder what happened?' Then the three of us went there and saw Francisco Rodríguez, *alias* Celín, grappling with José Alvarez, the blind man, and it so happened that Miguel Pacheco intervened to stop the fight and when he did so there were present the father and the brother of José Alvarez, one holding a 10-inch knife and the other a pocketknife, and had it not been for Juana *alias 'La India'*, that boy might have wounded Miguel Pacheco. That is what I saw."

The defendant testified:

"I just had lunch and went there and met Celín and we were standing by a kiosk and the blind man was coming up holding some parcels and there were several boys throwing crushed oranges at him and calling him names and I bought a cent worth of bananas and cut one in two and gave some to the blind man who did not want to take it and he took and ate it and he had just eaten the banana, when Celín, who had been drinking, came up and said: 'What is

the matter?' 'You are one,' said the blind man, whereupon they grappled and fell to the ground there and I then intervened to pull them apart and I fell with them and was then able to pick the blind man up and went up with him and as I saw a brother of the blind man and also his father I went on my way and they then took the blind man to the hospital. . . . Judge.—Who wounded the blind man? A.—I did not see. Q.—You do not know who wounded the blind man? A.—No, sir.''

The transcript ends as follows:

''Attorney for defendant: We rest. Judge: Is this your case? Attorney for defendant: Yes, sir. Judge: (He instructs the jury). (After the jury had retired to deliberate.) Will the case of carrying a weapon be submitted on the same evidence? Attorney for defendant: 'Yes, sir. Judge: The court will take the case under advisement. Attorney for defendant: We had in mind to file a motion for nonsuit in the case of carrying a weapon, because it has not been established that the defendant was carrying any of the weapons specified in the law and we are going to move for a dismissal of the case of carrying a weapon for lack of evidence. Judge: The court will come to a decision after the jury have returned their verdict. Judge: (After reading the verdict in the case of attempt to kill.) As to the offense of carrying a weapon the court, having weighed the evidence, convicts and finds the defendant Miguel Pacheco guilty of carrying a prohibited weapon and sentences him to two (2) months in jail.''

We think that from the evidence which we have just summarized, it clearly appears that the defendant was carrying a weapon with which bodily injury might be caused, and this is what the law requires. Sec. 1, Act No. 14, 1924 (Sess. Laws, p. 114); Penal Code, 1937 ed., p. 406. Was it a knife, as charged in the information?

''An awl, a dagger, or a steel arm (*arma blanca*)'' is the inference of the medical expert from the nature of the wounds inflicted; the defendant ''held a knife in his hand,'' says the wounded man, and then, that he struck him ''with a dagger,'' which he later on calls ''an awl''; ''he wounded him'' according to Claudina Alvarez, and according to Pablo

Batista, "he came out wounded"; Angela Nieves testified that she saw when the defendant "jumped and wounded" the blind man; she was not allowed to infer that it "must have been a knife"; Roberto Díaz testified to the fact of the wounds but he did not see the weapon; and Juan Cintrón, who had testified that the defendant was holding a pocket knife, on being asked by the defense to specify whether it was a knife or a pocketknife, answered: "knife or pocketknife, it makes no difference."

A knife, a pocketknife, a dagger and an awl are different things, indeed, and it can not be gainsaid that the evidence introduced lends itself to various interpretations. However, as the same is strong and convincing in the sense that the defendant was carrying a prohibited steel weapon (*arma blanca*) no matter how weak it might be as to such weapon being a knife, it can and must be held sufficient. The theory of the defendant was not that the weapon with which the wound was inflicted was not included among those prohibited by law, but that the defendant was not carrying any weapon whatsoever, his intervention in the occurrence having for its object to bring peace between the fighters.

The judgment, therefore, is not contrary to law and is supported by the evidence. The first error assigned is without merit.

The second is also without merit, as the judge was not bound by the verdict of acquittal rendered by the jury in the felony case but by his own weighing of the evidence.

In *People* v. *Correa, ante,* p. 262, this court recently said: "The acquittal of the defendant on the charge of an attempt to kill did not in any way affect the finding made by the judge upon the evidence regarding the charge of carrying a weapon."

Nor did the court commit the third and last error assigned. In this connection, the appellant in his brief says:

"When the jury acquitted the defendant of the charge of attempt to kill, the court manifestly showed its displeasure and immediately

510

proceeded, without considering the motion for nonsuit presented by the defense in reference to the prosecution for carrying a weapon (Transcript, p. 39), to render judgment sentencing the defendant to two months in jail for that offense, the trial judge thus showing deep displeasure and mental agitation as well as manifest passion against the defendant.''

There is nothing in the record to show the ''deep displeasure and mental agitation'' on the part of the trial judge nor ''manifest passion against the defendant.'' What is shown is his disagreement with the jury, which was fully justified from an examination of the evidence.

If anything transpired from the mind of the judge and showed itself on his face on account of the verdict of acquittal of the jury, it was surely the inevitable reaction of an honest conscience to a notorious injustice. And this could never be ground for the reversal of a judgment based on the facts and the law.

The appeal must be denied and the judgment appealed from affirmed.

Mr. Justice Todd, Jr., took no part in the decision of this case.